UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

MARIA GARCIA,                        §
 Plaintiff,                          §
                                     §
vs.                                  §
                                     §        CIVIL ACTION NO. 5:23-CV-00137
                                     §
WEBB COUNTY, TEXAS,                  §
 Defendants.                         §
                                     §
                                     §

**DEFENDANT WEBB COUNTY'S MOTION TO STRIKE AND EXCLUDE
PLAINTIFFS' EXPERT CAMERON LINDSAY**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Webb County ("Defendant") files this Motion to Strike and Exclude Plaintiffs'

Expert Witness Cameron Lindsay.  In support of this motion, Defendant would respectfully show

the Court the following:

**I.**
**Standards of Admissibility of Expert Evidence**

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court charged trial courts

with the task of being "gate-keepers" with regard to excluding unreliable expert testimony.

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). A trial court must make a "preliminary

assessment of whether the reasoning or methodology underlying the [expert's] testimony is

scientifically valid and of whether that reasoning or methodology properly can be applied to the

facts in issue." *Id*. at 592-93. The principles governing the admission of expert testimony as set

forth by the Supreme Court in *Daubert* are now reflected in the language of the Federal Rules of

Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

FED. R. EVID. 702.

Under Rule 702 of the Federal Rules of Evidence, a witness who is qualified by knowledge, skill, experience, training, or education may offer a relevant opinion if: (a) the expert's knowledge will help the trier of fact; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. *E.g., Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007). Also, the Court must determine whether the proposed expert witness has training or experience to offer opinions that are relevant for the expert's testimony to assist the trier of fact. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562-63 (5th Cir. 2004).

The burden is on the party offering the expert testimony to establish, by a preponderance of the evidence, that the testimony is admissible. *See Moore v. Ashland Chem. Co.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). The bottomline analysis is whether the testimony "will assist the trier of fact." *See Daubert*, 509 U.S. at 589.

## II.  Reasons to Exclude the Testimony of Cameron Lindsay

### A.  Qualifications

The deposition of Cameron Lindsay was conducted on September 30, 2024.  It is undisputed that Mr. Lindsay is unable to testify concerning the operation of county jails pursuant to the requirements established by the Texas Commission on Jail Standards and the training requirements established by the Texas Commission on Law Enforcement. As evidence, in his

curriculum vitae, Mr. Lindsay's experience is limited to his employment in States of Pennsylvania,

California and New York with the Federal Bureau of Prisons from 1989 until 2009 and with private

sector corrections from 2009 until 2014. *See* Exhibit 1 at P-015243 – P-015246. Thus, Mr. Lindsay

has no experience in Texas Jails, has never been a certified jailer in Texas and has never supervised

or trained anyone on the requirements of the Texas Commission on Law Enforcement or Texas

Commission on Jail Standards. *See id.*  Specifically, Mr. Lindsay testified as follows:

> Q.      Okay.· So after looking through all of your experience, it doesn't show that you have any experience with either a Texas prison -- is that correct?
> A       Yes.
> Q.      And you don't have any experience with serving as a peace officer in the state of Texas; is that correct?
> A       That is correct.
> Q.      Nor do you have any experience serving as a correctional officer in a Texas county jail; is that fair to say?
> A       Yes.
> Q.      Nor do you have any experience being a jail administrator in Texas for a Texas county jail; is that fair to say?
> A       Yes, sir.

*See* Exhibit 2 (Deposition Transcript of Cameron Lindsay) at Page 21, line 16 through Page 22,

line 6.[1] Specifically, Mr. Lindsay has not obtained any licenses or degrees related to Texas law

enforcement or correctional officers. *Id.*  Further, Mr. Lindsay has never taken any courses or

training concerning obtaining a jailer license through the Texas Commission on Law Enforcement

and related to the operation of Texas jails under the rules, regulations or statutory provisions for

the Texas Commission on Jail Standards. *Id.* at P35L—P37L12; P38L13—P39L18; P40L7—L14.

> Q.      Okay.· So is it fair to say that you are not familiar with the statutory requirements for the Texas Commission on Law Enforcement?
> A       That's fair to say.
> Q.      Okay.· So your expert report that you drafted, you are not relying on any information that you reviewed as part of the Texas Commission on Law Enforcement's rules, correct?
> A       I don't think so.

---

[1] Deposition Page and Line Designation will be cited as "P__L__."

Q.    Okay.· What about the licensing and training requirements that Texas correctional officers must go through to work inside of a county jail?· Did you review any of the Texas Commission on Law Enforcement's rule -- administrative rules and regulations that they've adopted for those types of trainings?

A    Not that I recall.

Q.    Are you familiar with any types of training courses or continuing education classes that are required for someone to work inside a Texas county jail that are required by the Texas Commission on Law Enforcement?

A    Certainly not off the top of my head. However, I have had to research those data points before in terms of other Texas cases.

Q.    But none of that is part of your expert report in this case?

A    I don't think so.

Q.    Okay.· So you understand that in order for someone to work inside a Texas county jail, they have to go through some sort of training and testing before they obtain a license to work in the jail?

A    I'll take you at your word.· I -- I believe --

Q.    Okay.

A.    -- yes.

Q.    Do you know if the administrator of the jail has to go through any specific training or obtain any type of license to operate a Texas county jail?

A    I don't know what that specifically is, but I would certainly hope so.

Q.    Okay.· So you yourself have taken no courses through the Texas Commission on Law  Enforcement, correct?

A    Correct.

Q.    You hold no licenses in Texas as either a jail administrator -- is that correct?

A    That's correct, sir.

Q.    Nor as a correctional officer?

A    Also correct.

Q.    Okay.· You also don't hold any license as a peace officer in Texas, correct?

A.    Correct, sir.

Q.    Okay.· And then separately, the Texas Commission on Jail Standards, you would agree with me, is the state agency in Texas that has statutory obligations for authorizing county jails or other facilities through municipalities to operate correctional facilities; is that fair to say?

A    I believe that's fair.

Q.    Have you ever worked with or been through the process of how the Texas Commission on Jail Standards inspects county jails?

A    No, sir.

Q.    Do you know from their rules, or statutory authority, what oversight they have related to Texas county jails?

A    Not precisely, sir.

*Id.*

---

Defendant's Motion to Strike and Exclude the Testimony of Cameron Lindsay          Page 4

Mr. Lindsay has no direct experience operating a Texas jail or providing any oversight on assisting county jails in Texas. *Id.* In fact, Mr. Lindsay has never even visited a Texas County jail. *Id.* at P34L19—L25. Finally, Mr. Lindsay has never been through any inspections or consulted on any inspections related to the Texas Commission on Jail Standard nor has he been involved with any audit or review of a Texas jail. *Id*. P40L7—L14.

Despite have no training or experience with Texas jails, Mr. Lindsay seeks to provide testimony concerning the Texas Commission on Jail Standards and Webb County's policies, procedures and operation of a Texas jail -- the applicable standards and opinions on the standards of care. *See* Exhibit 1 at ¶¶178-209; Conclusions: ¶¶285-299.  It is undisputed that Mr. Lindsay's experience is limited solely to the Federal Bureau of Prisons. Here, county jails have arrestees that are in different stages of being processed in the criminal justice system dissimilar to those convicted and incarcerated in the Federal Bureau of Prisons. As Mr. Lindsay is not a licensed jailer, has never been through training, and has never taught any classes for correctional officers in the State of Texas, Mr. Lindsay is not qualified to testify in this matter and his opinions should be stricken.

Further, Mr. Lindsay attempts to provide opinions concerning the American Correctional Association ("ACA") and the National Commission on Correctional Health Care ("NCCHC"). *See* Exhibit 1 at ¶¶200; 210-284.  Any reference to standards of the NCCHC and/or the ACA would confuse the issues, mislead the jury, and be unfair. Any evidence of and/or discussion of the NCCHC and/or ACA Standards should be excluded under Federal Rule of Evidence 403. Further, Plaintiff has failed to demonstrate that the Texas Commission on Law Enforcement or Texas Commission on Jail Standards incorporate, reference or mention the NCCHC and/or ACA

standards; therefore, these standards are not relevant under Federal Rule of Evidence 401.

Specifically, Mr. Lindsay testified as follows:

> Q. Is the American Correctional Association – is that a required standard or organization that Texas county jails must comply with?
>
> A Unfortunately not.
>
> Q. Okay.· Is that a voluntary organization that correctional facilities can become members of?
>
> A Yes, sir.
>
> Q. Do they have to pay to become members of the American Correctional Association?
>
> A Yes, sir.
>
> Q. Okay.· So that is not an association that is required statutorily, either by the federal government or by the State of Texas, for any correctional facility to be a member of?
>
> A Unfortunately, that's true, sir.
>
> Q. So what Texas county jails are members of the American Correctional Association?
>
> A I have no idea.· I doubt if any are, unfortunately.
>
> Q. Okay.· And that is not a requirement either from the Texas Legislature or from the Texas Commission on Jail Standards, correct?
>
> A Correct.· Unfortunately.
>
> Q. Can you identify any federal constitutional case in any federal court that requires American Correctional Association accreditation?
>
> A Well, how could I if -- if it's not required statutorily?
>
> Q. Okay.· So you would agree with me there is no case precedent that you're aware of that requires – as part of -- as part of a constitutional rights case of an inmate, whether they be a pre-trial detainee or just an inmate inside a correctional facility, that requires the institution in which they are incarcerated to be accredited through the American Correctional Association, correct?
>
> A Again, sir, the answer is the same.
>
> Q. Okay.· The answer is no?
>
> A I've answered it four times.
>
> Q. Okay.· The National Commission on Correctional Health Care that you've identified as minimum standards, is that an organization that is -- is that a private organization?
>
> A It is.
>
> Q. Okay.
>
> A And the answer is the exact same as ACA.· It is not required, unfortunately.
>
> Q. Okay.· So you would agree with me that both ACA, as you testified, and all of your answers for the National Commission on Correctional Health Care would be identical, that there is no requirement that anyone receive accreditation through that organization either?

> A   Yes.· And thus the shapes of our jails and prisons.
>
> Q.   Okay.· And again, because there is no statutory requirement for accreditation through the National Commission on Correctional Health Care, you can't identify any case precedent that governs the minimum standards established by that organization either?
>
> A   I'm not sure I understand that question exactly.
>
> Q.   Okay.· Are you able to identify any case precedent that you're aware of where the minimum standards of the National Commission on Correctional Health Care have been held to be a required constitutional standard?
>
> A.   Not that I know of.

*See generally*, Exhibit 2 at P54L5 – P57L11.  Therefore, Mr. Lindsay's opinions concerning the ACA and NCCHC should be stricken

## B.  Medical Opinions and Conclusions

Mr. Lindsay is not a medical professional and has neither received training nor education as such. Exhibit 1. Mr. Lindsay, however, opines as to sepsis, infections, heart rates, vital signs, medical intervention, "symptoms", emergency medical treatment, etc…. *See* Exhibit 1, including but not limited to, ¶¶134-147, 169, 224, 242-248, 260, 266, 282, 285, 288-290, 295, 297-298. Nonetheless, Mr. Lindsay repeatedly opines as to all manner of medical issues. Mr. Lindsay is not qualified to give testimony on any medical issues, and his opinions as to same should be stricken.

## C.  Legal Opinion and Conclusions

An expert is not allowed to testify to legal conclusions and is not allowed to testify to a defendant's state of mind or his culpability. The issue of deliberate indifference presents a question of law for the court. *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 394 (5th Cir. 2000). Mr. Lindsay's specific opinions are that:

- Defendant Webb County clearly violated the established constitutional rights of Mr. Torres-Garcia. Exhibit 1 at ¶129.
- There is little doubt its leadership knew that they could not protect the constitutional rights of its detainees. *Id*. at 163.
- The reasons for concern are simple: to demonstrate basic care and concern for fellow humans, and, in most cases, such as this one, detainees' individual rights are at risk for being violated. *Id*. at 186.

- The reason Webb County has failed to meet minimum jail standards and other industry-wide correctional standards is largely irrelevant. This demonstrates a systemic pattern of dysfunction and the proven inability to uphold detainees' rights. *Id*. at 204.
- Christopher clearly was not treated fairly by Webb County, and as a result his rights were violated
- and he lost his life. *Id*. at 252
- Incompetence, lack of leadership, lack of funding, poor or untimely training, and simple lack of care and concern on the part of Webb County were all potential factors that contributed to the overall medical negligence in the matter of Christopher. *Id*. at ¶266
- Webb County failed to adequately monitor Christopher. A WCJ employee indicated that close observation cells are that in name only, because in reality when staff members are busy they merely check on detainees to ensure they are alive. In this manner of "supervising" detainees, it is impossible for the County to reasonably protect its detainees from harm. This is clearly the case in the death of Christopher. *Id.* at ¶286.
- Defendant Webb County's policies, procedures, practices, and customs were moving forces that violated the constitutional protections of Christopher, which, ultimately lead to his death. Defendant Webb County's staff acted and failed to act, deliberately ignoring Christopher's obvious symptoms of infection. *Id.* at ¶288.
- Defendant Webb County failed to protect Christopher from harm while constitutionally obligated to so. *Id.* at ¶289.
- Violating County policy and/or procedures is evidence of Defendant Webb County violating detainees' rights; however, by the Defendants not following County policy with respect to how Christopher was treated gives rise to the Defendants' liability. *Id.* at ¶292.

It is clear that these opinions are based on unreliable assumptions as he has no direct knowledge of the operations of a Texas jail, the communications between the Texas Commission on Jail Standards and Defendant and has not reviewed any testimony of the fact witnesses. *Id*. Mr. Lindsay's legal conclusions are neither relevant nor supported by facts or data related to this incident. For these reasons, Mr. Lindsay's opinions should be stricken.

### D. Confusing and Prejudicial

Rule 403 of the Federal Rules of Evidence provides that the Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice or confusing the issues. As demonstrated above, Mr. Lindsay's opinions are based on unsupported

and unfounded speculative statements and Webb County Jail's policies and procedures. Mr. Lindsay is not qualified to opine on any of these topics as he has no education, training or experience in a Texas jail. As a result, his opinions on such topics are not relevant and would be of no help to the jury. Such opinion testimony would be unfairly prejudicial and should be excluded under Rule 403.

WHEREFORE, PREMISES CONSIDERED, Defendant Webb County respectfully requests that Cameron Lindsay be excluded as an expert witness.

Respectfully Submitted,

/s/ J. Eric Magee_____
J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com
Susana Naranjo-Padron
SBN: 24105688
s.naranjo-padron@allison-bass.com

**ALLISON, BASS & MAGEE, L.L.P.**
1301 Nueces Street, Suite 201
Austin, Texas 78701
(512) 482-0701 telephone
(512) 480-0902 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on this the 30th day of October, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to each counsel of record listed below.

T. Dean Malone
Law Offices of Dean Malone, P.C.
900 Jackson Street, Suite 730
Dallas, Texas 75202
ATTORNEYS FOR PLAINTIFFS

/s/ J. Eric Magee
J. Eric Magee