UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| MARIA GARCIA, et al.<br>  Plaintiffs, | §<br>§<br>§ | |
| vs. | §<br>§ | CIVIL ACTION NO. 5:23-CV-00137 |
| WEBB COUNTY, TEXAS,<br>  Defendant. | §<br>§<br>§<br>§ | |

### DEFENDANT WEBB COUNTY'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Webb County, Texas, files this Motion for Summary Judgment. Webb County moves for summary judgment on all claims against it. *See* Fed. R. Civ. P. 56(b). As Plaintiffs cannot create a fact issue on the elements of their causes of action, there is no genuine issue of material fact for trial, and Webb County is entitled to judgment as a matter of law. Webb County relies on the following:

I. **STATEMENT OF THE CASE**

**A.  Procedural History**

Plaintiffs Maria Garcia, as dependent administrator of and on behalf of the Estate of Christopher Torres-Garcia, and Christopher Torres-Garcia's heirs-at-law and wrongful death beneficiaries (Maria Garcia, mother; Lorenzo Torres, father; and Nancy P. Garcia, wife)(hereinafter "Plaintiffs") filed this Complaint against Webb County, Texas on December 1, 2023. Docket Entry No. 1 ("Doc."). Plaintiffs allege that the "County acted or failed to act at all relevant times through its employees, agents, representatives, jailers, and/or chief policymakers, all of whom acted under color of state law at all relevant times, and is liable for such actions and/or

failure to act to the extent allowed by law (including but not necessarily limited to law applicable to claims pursuant to 42 U.S.C. § 1983.)" Doc. 1 at ¶2. Plaintiffs claim that the "County's policies, practices and/or customs were moving forces behind and caused, were proximate causes of, and were producing causes of constitutional violations and resulting damages (including death)...." *Id.*

Plaintiffs' Complaint states that they plead "facts which give rise to, and thus assert, conditions of confinement claims." *Id. at* ¶¶5 and 79. "In the alternative, Plaintiff[s] plead[s] facts which give rise to episodic acts and/or omissions claims." *Id.* Plaintiffs suggest that the Court should "weed out unmeritorious claims." *Id. at* ¶80. Specifically, Plaintiffs allege a violation of the Fourteenth Amendment under 42 U.S.C. § 1983 and claim municipal *Monell* liability, an unconstitutional conditions of confinement claim, and/or an episodic act or omissions claim. *Id. at* ¶105, *et seq*.

**B.     Summary of the Facts**

On November 14, 2021, the Laredo Police Department responded to a residence on a report of an aggravated assault with a deadly weapon. Exhibit 1, Exhibit A at D-000024—000025. It was alleged that Christopher Torres-Garcia ("Torres-Garcia") struck an individual in the face with a black in color .380 caliber handgun causing a laceration. *Id*. The victim stated that Torres-Garcia pointed the handgun at him and threatened to kill him. *Id.* The victim wanted to press charges. *Id.* The whereabouts of Torres-Garcia were unknown. *Id.* The items recovered at the time included a "clear plastic baggy with black tar substance believed to be heroin." *Id*.

On November 16th, an investigator with the Laredo Police Department spoke with Torres-Garcia by telephone. *Id.* Torres-Garcia stated that he did not want to talk about the case and was too busy. *Id.* He stated that he would come to the station and talk in-person on November 22nd but never called or showed up. *Id.* Torres-Garcia "called 911 on November 29, 2021, for a drug

overdose (heroin) at Bruni Plaza-1000 San Bernardo Ave., Laredo, Texas 78040" – "he was transported to the hospital for treatment and then released." Exhibit 3 at P-003760.

On December 1, 2021, Torres-Garcia was arrested for the assault with a deadly weapon charge when he turned himself in at the Laredo Police Department and was transported to the Webb County Jail. *Id.*; *see also*, Exhibit 1, Exhibit A at D-000001; Exhibit 3. A Magistrate's Order of Emergency Protection for the victim was entered on December 2nd. *Id.* at D-000005—000010. Additionally, Torres-Garcia was taken before the Magistrate where he was informed of the Article 15.17 Code of Criminal Procedure requirements and a bond amount was set. *Id.* at D-000017—000035.

During Torres-Garcia's booking, jail staff collected several medical forms and other information. Exhibit 1, Exhibit E at D-000138—000153. On the admission forms, Torres-Garcia stated that he had not been hospitalized, had abused drugs (heroin), had no suicidal ideations, had no complaints, had no distress – "states he requests detox due to recreational drug usage, Heroin/gram daily, last time used was this morning." *Id*. at D-000138; D-000150; *see also*, Exhibit 1, Exhibit F at D-000155. Torres-Garcia was placed in detox and started on detox medication. *Id*. at D-000145; *see also*, Exhibit 1, Exhibit G at D-000136—000137. On December 7th, a nurse during "pill pass" was informed by Torres-Garcia that "he had 'shot up wrong' and his arm was infected. The left-arm did not have an open abscess, but she prescribed him antibiotics per protocol." Exhibit 1, Exhibit C at D-000073; *see also*, Exhibit F at D-000140 and Exhibit G at D-000136. During "pill pass" on the morning of December 8th, Torres-Garcia was provided the antibiotic medication without any complaints. *Id; see also,* Exhibit 1, Exhibit C at D-000084.

During the morning of December 8th, Torres-Garcia was taken to the medical department and was evaluated by medical personnel. Exhibit 1, Exhibit C at D-000083 and Exhibit F at D-

000155. Torres-Garcia requested something for anxiety and complained of left arm pain. *Id*. Following the discussion with medical personnel, Torres-Garcia calmed down and was assured that he would be prescribed/continued on antibiotics. *Id*. Torres-Garcia's vitals were normal. *Id*. At or about 1:15 p.m./1:30 p.m., Torres-Garcia requested assistance from the correctional officers at his cell, Cell 110, by stating that he did not feel good and that his chest hurts. Exhibit 1, Exhibit B at D-000039. Torres-Garcia was immediately removed from his cell and was unable to walk to the medical department. Exhibit 1, Exhibit B at D-000039—000041 and Exhibit F at D-000142—000143, *see generally*, Exhibit 1, Exhibit C. The correctional staff called for medical assistance and medical staff came to the cell with a wheelchair. *Id*. Medical personnel requested that dispatch contact emergency medical services and continued medical care for Torres-Garcia until the arrival of Laredo Fire Department, Emergency Medical Services. *Id*.; *see also*, Exhibit 1, Exhibit C at D-000085. Torres-Garcia was transported to the hospital and later that afternoon, a Laredo Medical Center physician pronounced Christopher deceased at approximately 4:15 PM. Doc. 1 at ¶15. The Webb County Medical Examiner determined that Torres-Garcia "died from sepsis due to infected drug injection sites. The manner of death is Accident." Exhibit 4.

Webb County, the Texas Rangers, and the Texas Commission on Jail Standards ("TCJS") all investigated. Exhibit 1 at Exhibits B and C and Exhibit 5.

## II. SUMMARY JUDGMENT EVIDENCE

Exhibit 1    Affidavit of Captain Jaime Magana

    Exhibit A    Webb County Jail Booking Documents including Order of Emergency Protection, Arrest Warrant and Complaint;

    Exhibit B    Webb County Jail Incident Reports from December 8, 2021;

    Exhibit C    Report of Investigation received by the Webb County Jail from the Texas Department of Public Safety, Texas Rangers;

|   |   |
|---|---|
| Exhibit D | Webb County Holding and Detox Observation Log; |
| Exhibit E | Webb County Jail Booking Medical Records; |
| Exhibit F | Webb County Jail Physician's Orders and Medical Notes; |
| Exhibit G | Webb County Jail Medication Administration Records; |
| Exhibit H | Webb County Jail Health Services Plan; and |
| Exhibit I | Webb County Jail Physician's Standing Orders and Protocol. |

Exhibit 2   Declaration of Kenneth Dean

    Exhibit A   Curriculum Vitae; and

    Exhibit B   Expert Report.

Exhibit 3   Webb County Medical Examiner, Investigator Report;

Exhibit 4   Webb County Medical Examiner's Autopsy; and

Exhibit 5   Texas Commission on Jail Standards Investigation Report.

### III.  ARGUMENT

**A.  Summary Judgment Standard**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment should be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Speaks v. Trikora Lloyd P.T.*, 838 F.2d 1436, 1438-39 (5th Cir. 1988). Fed. R. Civ. P. 56(e) provides, in part:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party. Fed. R. Civ. P. 56(e)(2).

Summary judgment is precluded under Fed. R. Civ. P. 56(c) when the dispute is genuine and the disputed facts might affect the outcome of the suit. *Id.*; *Speaks*, 838 F.2d at 1438-39. To

satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A summary judgment movant who will not bear the burden of proof at trial may meet its initial burden of establishing that there is no genuine issue of material fact merely by pointing out the absence of evidence supporting the nonmoving party's case. *See Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-719 (5th Cir. 1995).

Once the moving party has carried that burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *See Exxon Corp. v. Baton Rouge Oil & Chem. Workers Union*, 77 F.3d 850, 853 (5th Cir. 1996); *Stults*, 76 F.3d at 656. The party opposing summary judgment cannot establish a genuine issue of material fact by resting on the allegations made in his pleadings without setting forth specific facts establishing a genuine issue worthy of trial. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied* 506 U.S. 825 (1992). "Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Id.*

**B.     Webb County – *Monell* claims**

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quotations omitted). A county would not be liable under 42 U.S.C. §1983, so long as the county did not have a policy that caused the violation or could be shown to have engage in a practice that caused the violation. *Monell v. New York Dept. of Soc. Serv.*, 436 U.S. 658,

690-94, 98 S. Ct. 2018 (1978). Liability is established under §1983 "only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 38, 385, 109 S.Ct. 1197 (1998). The governmental policy and the alleged constitutional deprivation must be greater than "but-for" causation; indeed, the municipal policy must be "affirmatively linked to the constitutional violation and be the moving force behind it." *Fraire v. City of Arlington,* 957 F.2d 1268, 1281 (5th Cir. 1992).

> When the policy itself is not unconstitutional, considerably more proof than a single incident will be necessary as to both the fault of the [County] and the link between the policy and the constitutional deprivation. *City of Oklahoma City v. Tuttle*, 471 U.S. 808. 824. 85 L. Ed. 2d 791, 105 S. Ct. 2427 (1985). Plaintiff must allege specific facts to show: 1) policy or custom existed; 2) the government policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) the custom or policy served as the moving force behind the violation*. Meadowbriar Home for Children, Inc., v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996).

*Flatt v. City of Lancaster*, 2000 WL 1225787 *4 (N.D. Tx. Aug. 28, 2000).

A governmental unit can act only through its human agents, but it is not vicariously liable under §1983. *Oklahoma City v. Tuttle*, 471 U.S. 808, 817-18, 105 S. Ct. 2427, 2433, (1985)(plurality); *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978); *Benavides v. County of Wilson, Texas*, 955 F.2d 968, 972 (5th Cir. 1992). A county can be held liable for its non-policy making employees' acts only if the employees were carrying out the county's policies when they acted. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389-92, 109 S. Ct. 1197, 1205-06, 103 L.Ed.2d 412 (1989).

> A municipal "policy" must be a deliberate and conscious choice by a municipality's policy maker. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) (*quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1292, 1300, 89 L. Ed.2d 452 (1986). While the municipal policy maker's failure to adopt a precaution can be the basis for §1983 liability, such omission must amount to an intentional choice, not merely an unintentional negligent oversight. *City of Canton*, 489 U.S. at 387, 109 S. Ct. at 1204; *Manarite v. City of Springfield*, 957 F.2d 953, 959 (1st Cir. 1992).

> The Supreme Court has held that municipal failure to adopt a policy does not constitute such an intentional choice unless it can be said to have been "deliberately indifferent." *City of Canton*, 489 U.S. at 390, 109 S. Ct. at 1205. A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights. *Id.*

*Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992).

Here, Plaintiffs allege no explicit policy officially adopted or promulgated. Doc. 1. Instead, Plaintiffs list a myriad of alleged "policies, practices, and customs" which they assert give rise to their alleged conditions of confinement claims, or in the alternative, episodic act and/or omission claims. *Id*. at ¶80. Those alleged "policies, practices, and customs" include the following:

- an alleged failure to monitor or in the alternative, inadequately monitoring detainees;

- an alleged failure to reprimand and/or take remedial action against employees related to Torres-Garcia's death;

- allegedly "knowing that detainees needed immediate emergency medical care" and continuing to incarcerate such detainees in lieu of needed care;

- an alleged failure to take action regarding serious health issues;

- an alleged failure and/or refusal to transport detainees in need of emergency medical care to a local emergency room;

- an alleged failure to provide and/or delay in providing medical treatment;

- allegedly treating detainees "without apparent health insurance, Medicare coverage, or Medicaid coverage differently than those with such coverage";

- allegedly "only contact[ing] EMS and/or transport[ing] a person to a local hospital if the person appeared to be near death or had become nonresponsive';

- alleging that "Webb County employees may not have responded, or in the alternative not responded appropriately, to serious medical and/or mental health situations which were visible and apparent through a video feed";

- alleging that the "schedule and the services of only one physician were woefully inadequate";

*Id*. Further, Plaintiffs allege that Webb County had "no policy and provided no training regarding:" (1) "recognition of pneumonia in detainees"; (2) "recognition of sepsis in detainees"; (3) "recognition of IV drug user-specific healthcare issues"; and (4) "obtaining blood tests for detainees who were known IV drug users, and/or had known infections." *Id*. Finally, Plaintiffs claim that Webb County had "policy of not obtaining a medical clearance at a local hospital for known heroin/IV drug users" and a custom or practice: (1) "to simply take detainees to 'medical' when they complained, not conduct any evaluation of any substance, and then return such detainees to their cells, just so that figurative 'boxes could be checked'"; and (2) to not conduct evaluations of detainees with serious medical issues but instead simply to provide medication based upon standing orders and not based on a detainee's specific medical needs. *Id.*

   1. **Conditions of Confinement**

"A condition of confinement' case is a constitutional attack on 'general conditions, practices, rules, or restrictions of pretrial confinement." *Est. of Bonilla by & through Bonilla v. Orange Cnty., Texas*, 982 F.3d 298, 308 (5th Cir. 2020)(quoting *Flores v. Cty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997)). There are three elements that Plaintiffs must establish to prove an unconstitutional condition of confinement: "(1) "a rule or restriction or ... the existence of an identifiable intended condition or practice ... [or] that the jail official's acts or omissions were sufficiently extended or pervasive"; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [a detainee's] constitutional rights." *Id*. at 308-309 (citing *Montano v. Orange County*, 842 F.3d 865, 874 (5th Cir. 2016); (*see also*, *Estate of Henson v. Wichita County*, 795 F.3d 456, 468 (5th Cir. 2015)). Further, Plaintiffs must demonstrate a "**pervasive pattern of serious deficiencies** in providing for [the detainee's] basic human needs; any lesser showing cannot prove punishment in violation of the detainee's Due

Process rights." *Id*. (*Shepherd v. Dallas Cnty.*, 591 F.3d 445, 454 (5th Cir. 2009)(emphasis added). The conditions must "amount to punishment violating the Due Process Clause prohibition on punishment prior to conviction." *Bell v. Wolfish,* 441 U.S. 520,535 (1979)). The Fifth Circuit has ruled that proving "a pattern is a heavy burden, one that has rarely been met in our caselaw." *Id.* It is clear that "isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate." *Id*. (quoting *Montano*, 842 F.3d at 876). Further, Plaintiffs must demonstrate that the pattern or practice "was the moving force behind the violation." *Id.* (citing *Sanchez v. Young Cty., Texas*, 956 F.3d 785, 791 (5th Cir. 2020)).

**2. Episodic Acts or Omissions**

In order to establish liability for the County in an episodic-act case, Plaintiffs must show "(1) that the municipal employee violated [the pretrial detainee's] clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020). When a pretrial detainee's claim is based on a jail official's episodic act or omission, "the proper inquiry is whether the official had a culpable state of mind in acting or failing to act." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 643 (5th Cir. 1996). To prove a due-process violation, a pretrial detainee must show that the "official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Cadena*, 946 F.3d at 727-728 (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006)). Plaintiffs must also demonstrate deliberate indifference, which requires that the employee acted with "something more than mere negligence but less than

acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970 (1994). "Deliberate indifference is an extremely high standard to meet." *Id*. (quoting *Crumbliss v. Darden*, 469 F. App'x 325, 327 (5th Cir. 2012)). Finally, to prevail against the County, Plaintiffs must show either "written policy statements, ordinances, or regulations or a widespread practice that is so common and well-settled as to ... fairly represent municipal policy that was the moving force behind the violation." *Id*. (citing *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009)(quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001))(internal quotations omitted).

3. **Plaintiffs' claims fail to meet the legal standards for *Monell* liability, unconstitutional conditions of confinement, and/or an episodic act or omissions claim.**

Here, Plaintiffs have not and cannot demonstrate the existence, or lack thereof, of any "policy, custom or practice" that violated any constitutional standard. Specifically, the summary judgment evidence establishes the following:

Pursuant to the Texas Commission on Jail Standards, Webb County meet the minimum jail standards concerning its Health Services Plan. Exhibit 5; see also, Exhibit 1, Exhibit H. Specifically, the Webb County Jail's Health Service Plan provides, in part, that:

1. Inmates may request medical, eye, dental, or mental service daily by:

    a.  Making an oral request to the nurse making rounds for medical, eye, dental or mental services or;

    b.  A written request for medical, eye, dental, or mental service to the jailer on duty.

2. When a request for medical, eye, dental, or mental services is submitted to the jailer on duty, it will be submitted to the nurse for approval and referral to appropriate care provider.

Exhibit 1, Exhibit H at D-000156. "Emergency medical service is available around the clock by notifying the jailer on duty who will ensure that assistance and treatment is provided." *Id*. "Emergency medical service personnel will be accompanied by an officer when transporting an inmate for medical services to assure their safety and to secure the inmate until returned to the jail." *Id*. Further, the Webb County Jail had standing Physician's Orders for medication to be given to detainees suffering from the withdrawals of alcoholism, methadone addiction, benzodiazepine (Ativan, Xanax, Klonipin) addiction, and heroin addiction. Exhibit 1, Exhibit I.

On December 8, 2021, Torres-Garcia "died from sepsis due to infected drug injection sites" and the manner of death was an accident. Exhibit 4. During Torres-Garcia's initial intake and booking into the Webb County Jail on December 1, 2021, he stated that he had not been hospitalized, had abused drugs (heroin), had no suicidal ideations, had no complaints and was in no distress; however, he requested "detox due to recreational drug usage, Heroin/gram daily, last time used was this morning." Exhibit 1, Exhibit E at D-000138; D-000150; *see also*, Exhibit 1, Exhibit F at D-000155.

> 12/01/21　3:24 pm　Inmate seen and medically cleared outside in sally port. COVID-19 tested and result Negative. Inmate A/Ox3, no complaints, no suicidal ideations, no distress noted at present time, cooperative. Inmate states he uses the following recreational drug Heroin (last time used was this morning), also states the amount used is 1 gram daily. Inmate requests detox. Inmate will be in Heroin Detox, will be monitored and will follow protocols as ordered. Inmate denies any other medical concerns at present time. V/S are as follows: B/P: 142/46, P: 72, RR: 18 T: 98.1, SP02: 97% at room air, asymptomatic.

*Id*. at Exhibit F at D-000155. Pursuant to Torres-Garcia's request, the Medication Administration Record demonstrates that withdrawal medication (Clonidine, Vistaril, and Remeron) were provided. Exhibit 1, Exhibit G at D-000136; *see also*, Exhibit 1, Exhibit I at D-000172; Exhibit F at D-000145. Torres-Garcia refused the withdrawal medication on December 3rd through December 6th. *Id*. at Exhibit G at D-000137.

On December 7th, a nurse during "pill pass" was informed by Torres-Garcia that "he had 'shot up wrong' and his arm was infected. The left-arm did not have an open abscess." Exhibit 1, Exhibit C at D-000073. The nurse immediately prescribed him antibiotics (Clindamycin and Bactrim) per protocol due to his complained of infection from IV heroin. Exhibit 1, Exhibit F at D-000140 and Exhibit G at D-000136.

On December 8, 2021, Torres-Garcia requested assistance which resulted in immediate action by the correctional officers – the correctional officers promptly sought medical treatment for him. During the morning shift, CO Molina was advised by Torres-Garcia that "he was feeling anxious, that he wasn't feeling good. I decided to take inmate to Medical for further actions." Exhibit 1, Exhibit B at D-000042; *see also*, Exhibit 1, Exhibit C at D-000083 and Exhibit F at D-000155. In the medical department, Torres-Garcia requested something for anxiety and complained of left arm pain. *Id*. Following the discussion with medical personnel, Torres-Garcia calmed down and was assured that he would be prescribed/continued on antibiotics. *Id*. Torres-Garcia's vitals were normal. *Id*.

After lunch on December 8th, Torres-Garcia requested assistance from the correctional officers at his cell, Cell 110, by stating that he did not feel good and that his chest hurts. Exhibit 1, Exhibit B at D-000039. Torres-Garcia was immediately removed from his cell and was unable to walk to the medical department. Exhibit 1, Exhibit B at D-000039—000041 and Exhibit F at D-000142—000143, *see generally*, Exhibit 1, Exhibit C. The correctional staff called for medical assistance and medical staff came to the cell with a wheelchair. *Id*. Medical personnel requested that dispatch contact emergency medical services and continued medical care for Torres-Garcia until the arrival of Laredo Fire Department, Emergency Medical Services. *Id*.; *see also*, Exhibit 1,

Exhibit C at D-000085. Torres-Garcia was transported to the hospital. Exhibit 1, Exhibit F at D-000141—000144; *see also*, Exhibit B at D-000043—000044.

Further, the Webb County Jail Observation Log demonstrates that Cell 110 was timely monitored through December 8th. Exhibit 1, Exhibit D. The Texas Rangers' Report demonstrates the following timeline for December 8th concerning Torres-Garcia:

- 10:40 a.m.- A Correctional Officers (CO) speak with Torres-Garcia. Torres-Garcia points to his left arm.
- 10:41 a.m.- Torres-Garcia is removed from Cell 110 and taken to Medical for evaluation.
- 11:14 a.m.- Torres-Garcia returns to Cell 110.
- 11:26 a.m.- Torres-Garcia stands up from his bedroll, walks to the cell door, and receives medication.
- 11:28 a.m. through 11:52 a.m.- Torres-Garcia is seen lying and moving periodically on his bedroll.
- 11:52 a.m.- A CO delivers meals to Cell 110.
- 11:53 a.m.- Torres-Garcia trades his meal to an inmate for an additional drink.
- 11:53 a.m. through 01:17 p.m.- Torres-Garcia is seen lying and moving periodically on his bedroll.
- 1:18 p.m.- Torres-Garcia speaks with CO.
- 1:18 p.m.- Torres-Garcia is removed from Cell 110.
- 1:16 p.m. - Torres-Garcia exits Cell 110, sits on the ground (Speaks inaudible to the CO), stands, and leans against the wall.
- 1:17 p.m. - Squats, and again stands. A CO begins to handcuff Torres-Garcia. Torres-Garcia wobbles on his feet and falls backward. Two CO provide care; one CO goes to get a wheelchair.
- 1:17 p.m. - Torres-Garcia is assisted up and begins walking toward the medical department.
- 1:18 p.m. - Torres-Garcia starts to fall again, and CO's assist him to the floor. Torres-Garcia is placed in a wheelchair.
- 1:18 p.m. - Medical personnel arrive.
- 1:19 p.m. - Torres-Garcia is placed on the floor.
- 1:21 p.m. - Torres-Garcia is again placed in a wheelchair and taken to the Medical Department.
- 1:26 p.m.- 1:47 p.m. - Medical personnel provided medical care.
- 1:47 p.m.- Laredo Fire Department (LFD), Emergency Medical Services (EMS) arrive.
- 1:50 p.m.- Torres -Garcia is placed on a stretcher.
- 1:51 p.m.- Torres-Garcia Departs with LFD EMS.

Exhibit 1, Exhibit C at D-000084-000085.

Kenneth Dean, Hopkins County Jail Administrator, states that he "reviewed the policies and procedures of the WCSO, and … [finds] the policies to be effective and correct." Exhibit 2, Exhibit B at ¶15. Further, Mr. Dean states that he has "found no fault in WCSO, with the regard to Torres-Garcia. Each time he had a complaint it was addressed by staff quickly and appropriately." *Id*. at ¶16. Mr. Dean provides that

> I have diligently reviewed the events and I have observed Mr. Torres-Garcia had no complaints until 7 days after his incarceration. During those seven days he was receiving Detox medications while he was in Detox Cell and Holding Cell. On the morning of December 8, 2021, he made a complaint regarding having anxiety, the staff immediately responded and he was taken to medical. Several hours later he complained again and again he was immediately taken to medical via a wheelchair, by staff. The medical department began addressing his needs and Mr. Torres Garcia was transported to Laredo Medical Center. The autopsy showed the cause of death as Sepsis with Subcutaneous Abscesses Involving Bilateral Arms and Right Forearm and history of intravenous drug use.

*Id*. at ¶17. There is "no evidence that Webb County or its employees have a practice or pattern of neglecting incarcerated inmates, to the contrary they exhibited quick responses to the needs of Mr. Torres-Garcia" and "no evidence that appropriate care was not given to Mr. Torres-Garcia." *Id*. Finally, Mr. Dean commends "the staff and the immediate action taken, each time Mr. Torres Garcia made a complaint." *Id*.

The Texas Commission on Jail Standards determined that "Inspector Wendy Wisneski reviewed all submitted documentation to ensure compliance with minimum jail standards. After careful review, it was determined there appears to be no violation of minimum standards and no further action is warranted at this time." Exhibit 5. The Texas Rangers Report had no findings of wrongdoing on the part of any employee of the Webb County Jail or Webb County, Texas. Exhibit 1, Exhibit C.

As demonstrated above, Plaintiffs' *Monell* claim fails as they have not and cannot establish a "policy, practice or custom" that was the moving force behind a constitutional violation.

Similarly, that same missing "policy, practice or custom" means "a pervasive pattern of serious deficiencies in providing for [the detainee's] basic human needs" has not and cannot be established for a conditions-of- confinement claim. *Shepherd,* 591 F.3d at 454. Thus, the failure of Plaintiffs' *Monell* claim "is fatal" to Plaintiffs' conditions-of-confinement claim. *Bonilla,* 982 F3rd at 308. Further, Plaintiffs have not and cannot demonstrate either episodic acts prong.

## IV. PRAYER

For these reasons, Defendant Webb County requests that the Court grant this Motion for Summary Judgment dismissing Plaintiffs' claims in their entirety, enter judgment that Plaintiffs take nothing, assess costs against Plaintiffs, and award Defendant Webb County all other relief to which it is entitled.

Respectfully Submitted,

/s/ J. Eric Magee
J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com
Susana Naranjo-Padron
SBN: 24105688
s.naranjo-padron@allison-bass.com

**ALLISON, BASS & MAGEE, L.L.P.**
1301 Nueces Street, Suite 201
Austin, Texas 78701
(512) 482-0701 telephone
(512) 480-0902 facsimile

**CERTIFICATE OF SERVICE**

 I hereby certify that on this the 8th day of November, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to each counsel of record listed below.

 T. Dean Malone
 Law Offices of Dean Malone, P.C.
 900 Jackson Street, Suite 730
 Dallas, Texas 75202
 ATTORNEYS FOR PLAINTIFF

             /s/ J. Eric Magee
             J. Eric Magee