UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| MARIA GARCIA, as dependent administrator of and on behalf of the ESTATE OF CHRISTOPHER TORRES-GARCIA, and CHRISTOPHER TORRES-GARCIA's heir(s)-at-law and wrongful death beneficiaries;<br><br>　　　　Plaintiff,<br><br>v.<br><br>WEBB COUNTY, TEXAS;<br><br>　　　　Defendant. | CIVIL ACTION NO. 5-23-CV-00137<br><br>JURY DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE AND EXCLUDE THE TESTIMONY OF CAMERON LINDSAY**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff files this Response to Defendant's Motion to Strike and Exclude the Testimony of Cameron Lindsay. In support, Plaintiff shows the Court as follows:

### I.　　BACKGROUND

Christopher Torres-Garcia suffered and died a preventable death from sepsis while he was detained in the Webb County jail. (Doc. 1) Plaintiff filed her Original Complaint on December 1, 2023, alleging violations of Mr. Torres-Garcia's constitutional rights. (Doc. 1) Pursuant to the Court's Scheduling Order, Plaintiff designated expert witnesses on June 28, 2024, and served copies of expert reports to the County on that date. (Doc. 11)

Plaintiff designated Cameron Lindsay, an experienced correctional practitioner, as one of her expert witnesses. Webb County seeks to strike and exclude Mr. Lindsay from testifying on several opinions in his report. (Doc. 16) However, Mr. Lindsay's opinions meet the standards

under Rule 702 and *Daubert*, and his opinions will help the trier of fact determine relevant issues at trial?. At trial, Mr. Lindsay will be available for cross-examination, and the jury will have the opportunity to weigh the evidence and testimony before it. There is no basis for excluding his opinions at this stage.

## II. ARGUMENTS AND AUTHORITIES

A party offering expert testimony has the burden of demonstrating that the expert is qualified and that the expert's testimony is reliable and relevant to an issue in the case. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 at 590-91 (1993). But "[t]he proponent [of expert testimony] need not prove to the judge that the expert . . . is correct." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The proponent is only required to show "by a preponderance of the evidence that the testimony is reliable." *Id*. Pursuant to the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> 
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

While there are a number of factors a Court may consider when determining whether to allow or exclude expert testimony, *Daubert* factors are not "a definitive checklist or test." *Daubert,* 509 U.S. at 593. Rather, the *Daubert* framework is "a flexible one." *Id.* at 594; *see Buttross Props. v. Underwriters at Lloyds London*, SA-16-CV-1272, 2017 WL 9362700, at *1 (W.D. Tex. Sept. 12, 2017). And it is within the "sound discretion" of the district court to decide whether to

allow or exclude an expert from testifying. *Id.*, *citing St. Martin v. Mobil Expl. & Producing U.S., Inc.,* 224 F.3d 402, 405 (5th Cir. 2000).

Importantly, "the trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (quoting Fed. R. Evid. 702 advisory committee's note). "Rather, as *Daubert* makes clear, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596). Accordingly, "a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Id.* The factfinder should hear expert testimony and decide whether to "accept or reject that testimony after considering all factors that weigh on credibility, including whether the predicate facts on which [the expert] relied are accurate." *Id.*

### A. Lindsay is qualified.

Lindsay is qualified and knowledgeable on standard correctional practices across the country. Over the course of his 25-year career as a correctional practitioner, Lindsay was a warden of "five separate facilities over the course of 12 years, including" three federal prisons, one federal jail, and **one *county* jail**. (Doc. 129-1 ¶ 1)[1] It defies logic that Lindsay would not be qualified to opine on jail standards required by the *federal* Constitution when he was a warden of three *federal* penitentiaries and a *federal* jail over the course of many years, notwithstanding the fact that the County is accused of violating the *federal Constitution in a County jail*. A detainee's constitutional rights can be just as easily violated in a county jail as in a federal jail.

Lindsay has over 44 years of experience in criminal justice. (¶ 2) He started as a police

---

[1] Paragraph references are to Lindsay's expert report, which is attached to the County's motion to exclude as Document Number 16-1.

dispatcher, then became a police officer, and taught criminal justice at six institutions of higher learning. (¶ 2) As is particularly relevant to his qualifications to opine on jail standards, Lindsay worked as a correctional practitioner for 25 years. (¶ 2) For 20 of those years, Lindsay served with the United States Department of Justice in the Federal Bureau of Prisons. (¶ 3) He was assigned to seven different correctional facilities of varying security levels and complexity, twice appointed as associate warden, and appointed three times as warden. (¶ 3) He was also the deputy regional director for the Federal Bureau of Prisons Northeast Regional Office. (¶ 3)

Lindsay was a Federal Bureau of Prisons warden for the following facilities: Federal Correctional Institution in Lompoc, California, in charge of 1,500 detainees and 180 staff members; United States Penitentiary in Canaan, Pennsylvania, in charge of 1,700 detainees and 375 staff members; and Metropolitan Detention Center in Brooklyn, New York, in charge of 2,000 detainees and 450 staff members. (¶ 4) He also served as warden for five years over the Moshannon Vally Correctional Center in Philipsburg, Pennsylvania, in charge of 1,500 detainees and 240 staff members; and over the Delaware County Prison in Glen Mills, Pennsylvania, in charge of 2,100 detainees and 575 staff members. (¶ 5)

Lindsay has a Bachelor of Science degree in Criminal Justice, a Master of Arts degree in Counseling, and a Master of Science degree in Safety. (¶ 8) He also graduated from the West Virginia State Police 51st Basic Academy and the Federal Law Enforcement Training Center, where he was elected class speaker. (¶ 9) Lindsay taught criminal justice prior to beginning and throughout his career in corrections. (¶ 6) He was a full-time tenure-track instructor for two years at Fairmont State College and taught at five other colleges and universities, including Pennsylvania State University. (¶ 6) He also authored a book on his experiences in corrections. (¶ 12)

At the time he retired from federal service, Lindsay had top-security clearance and had

been appointed by the United States Attorney General to the United States Government's Senior Executive Service. (¶ 7) Lindsay was hired by a state Department of Protection and Agency to opine on that state's Department of Corrections' use of long-term segregation and use of four- and five-point physical restraints. (¶ 10) The United States Office of the Federal Public Defender recognized Lindsay as a Federal Bureau of Prisons expert in multiple federal districts. (¶ 11) And Lindsay has provided testimony at deposition or trial in at least 13 matters in the last five years. (¶ 13)

Lindsay does not need "direct experience operating a Texas jail" (Doc. 16 at 5) to be qualified under Rule 702 to provide opinions on the *federal* Constitution. Plaintiff's claims ultimately arise from the United States Constitution, not from a lack of compliance with standards promulgated by Texas agencies. Although failures to comply with regulations or other standards can establish a policy, practice, or custom, compliance with state standards alone does not necessarily meet constitutional standards.

Given Lindsay's plethora of experience in federal and non-federal correctional settings and the accolades he has received, it is hard to envision someone who would be more qualified to opine on jail standards that are required to comply with the United States Constitution.

The County also faults Lindsay for relying on national jail standards *in addition to* standards set forth by the Texas Commission on Jail Standards (TCJS). But *federal* constitutional standards for protecting detainees are not set by *state* minimum standards. (*See, e.g.*, ¶¶ 198-200) Those standards are set by the United States Constitution. Lindsay's opinions are based on standards required to comply with the Constitution. The failure to comply with well-known jail standards supports a finding of a constitutional violation. *See Lombardo v. City of St. Louis*, 210 L. Ed. 2d 609, 141 S. Ct. 2239, 2241-42 (2021) (recognizing that the failure to follow "well-known

police guidance" can support a finding of a constitutional violation).

Lindsay opines, based on his education and experience, that minimal industry standards "relevant to the safe operation and management of correctional facilities" are set by the American Correctional Association (ACA) and the National Commission on Correctional Health Care (NCCHC). (¶ 209) And Lindsay specifically analyzes standards applicable to *every* correctional facility, which require correctional facilities "to ensure basic standards for the safety and wellbeing of every human being in their custody." (¶ 211)

In no way does Lindsay limit his opinion to standards only set forth by ACA and NCCHC. Plaintiff's claims do not arise from a violation of ACA or NCCHC standards. The key consideration is whether the expert has enough education and relevant experience to reach a reliable conclusion. *See Pipitone*, 288 F.3d at 247. Lindsay's opinions are based on the aforementioned standards, including TCJS standards, and his professional experience plus his review of the specific records in this case, which all show that his opinions are reliable. *See, e.g., Kovaly v. Wal-Mart Stores Tex., L.L.C.*, 627 Fed. App'x 288, 291 (5th Cir. 2015).

Lindsay's inclusion of these standards helps the trier of fact determine the issues before it, which is the purpose of expert testimony. Fed. R. Evid. 702. Lindsay opines that the County, through its employees, failed to comply with the standards of all three organizations: ACA, NCCHC, *and* TCJS. (¶¶ 195, 201, 249, 282) He explains why ACA standards are relevant and why NCCHC standards are relevant. (¶¶ 220, 262-65) The jury will not be deciding whether the County violated inapplicable standards; it will be deciding whether the County violated Mr. Torres-Garcia's constitutional rights. Thus, the jury will not be confused by the inclusion of ACA and NCCHC standards, nor is the inclusion of these standards "unfair." (Doc. 16 at 5) And Lindsay will be subject to "[v]igorous cross-examination" and "careful instruction" from the Court. *See*

*Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596).

### B. Lindsay is not providing medical opinions.

Lindsay does not purport to be a medical expert. Lindsay's opinions on sepsis, infections, heart rates, vital signs, medical intervention, symptoms, and emergency medical treatment are all limited to his experience and education in corrections, not in any medical field. (*See* Doc. 16 at 7) All of the opinions the County seeks to exclude on this basis are limited to Lindsay's knowledge of corrections and are not medical opinions.

Lindsay limits his opinions on sepsis to what "correctional worker[s] in America" would know about "how dangerous sepsis infections are" and that those infections require "immediate medical intervention[.]" (¶¶ 134-137) Lindsay further opines that "educated correctional workers" would know that "an open abscess on an individual could lead to deadly infections, such as sepsis." (¶ 224) These are not medical opinions. They are opinions regarding signs and symptoms a non-medical correctional officer would know indicate a person requires immediate medical intervention.

Likewise, opinions regarding the signs and symptoms of which a correctional officer would know that Mr. Torres-Garcia exhibited while in custody are not medical opinions. Lindsay can appropriately testify as to what a correctional officer or the County would know about Mr. Torres-Garcia's need for medical intervention. (¶¶ 260, 285, 288-90, 295, 297-98) Lindsay is beyond qualified as a correctional expert to offer opinions on issues that occur in jails, even if those issues are about the medical needs of people detained in those jails.

The County also seeks to exclude several statements in Lindsay's reports that simply articulate ACA, NCCHC, or other standards, or summarize statements that Lindsay reviewed in order to form his opinions. For example, the County seeks to exclude the following:

- LVN Elizondo stated that all heroin addicts typically have ulcers and abscesses and how dangerous they can be. LVN Elizondo further stated that he was attempting to communicate with the WCJ's administration about the well-known issue of heroin addicts and the connection to sepsis. (¶ 169)

This is merely a summarization of a statement or statements that Lindsay reviewed. The County also seeks to exclude several opinions that are quotes of ACA, NCCHC, or other standards. For example, the County seeks to exclude the following:

- "ACA Standard 1-CORE-4C-07 (Mandatory), Chronic Care, states, 'Inmates with chronic medical conditions, such as diabetes, hypertension, and mental illness receive periodic care by a qualified health care provider that include monitoring of medications and laboratory testing.' (p. 33)" (¶ 242)

None of these statements should be excluded. They are not only not medical opinions, but they are also not even opinions at all. (¶ 242, 245-48)[2] The factfinder is entitled to hear expert testimony and decide whether to "accept or reject that testimony after considering all factors that weigh on credibility, ***including whether the predicate facts on which [the expert] relied are accurate***." *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596) (emphasis added).

### C. Lindsay's opinions are not legal opinions.

The County challenges several of Lindsay's opinions and conclusions as purported legal conclusions. An expert opinion "is not objectionable just because it embraces an ultimate issue" to be decided by the factfinder. Fed. R. Evid. 704(a). Conversely, an expert may not opine on purely legal matters or advise on how the law should be interpreted or applied. *Steward v. Smith*, No. CV SA-10-CA-1025-OG, 2018 WL 11361746, at *2 (W.D. Tex. Sept. 4, 2018) (citing *Estate of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999)). An expert, however, "may testify as to legal matters when those matters involve questions of fact." *Askanse v. Fatjo*, 130 F.3d 657,

---

[2] The County also seeks to exclude the following opinion on the same basis, "With respect to all of the aforementioned NCCHC standard citations, the WCJ failed Christopher." (¶ 282) This is not a medical opinion, nor does it contain any reference to any medical symptoms, conditions, or treatments. It, therefore, should not be excluded.

672-73 (5th Cir. 1997); *see also Waco Int'l, Inc. v. KHK Scaffolding Houston, Inc.*, 278 F.3d 523, 533 (5th Cir. 2002) (holding trial court did not err when it permitted expert "testimony as to legal issues" involving the conduct in question); *Flanagan v. City of Dallas*, No. 3:13-CV-4231-M-BK, 2017 WL 2817424, at *1 (N.D. Tex. May 25, 2017) (Toliver, M.J.) ("Qualified experts are permitted to offer opinion testimony as to industry standards or norms and whether or not they were followed in a particular case, as long as such opinions involve questions of fact rather than purely legal matters."). "[S]tandards of care, efficacies of practice, and policies or processes implemented pursuant to law constitute the framework that . . . experts (and others in their field) work in every day." *Steward*, 2018 WL 11361746, at *2. "[I]t would be difficult, if not impossible, for them to testify about the facts without referring to the legal framework that guides their practices." *Id*.

In the challenged paragraphs, taking them in the context of the entire report, Lindsay describes the standards required under the Constitution to protect detainees in the County jail. (¶¶ 129, 163, 186, 204, 252, 266, 286, 289, 292). Several of his statements are in fact general comments regarding practices that do not comply with the Constitution or merely acknowledging the legal standards that apply to the facts. Lindsay lays out the facts and describes how those facts would support a finding that County employees failed in their constitutional duty to protect Plaintiff. Thus, he provides the framework for the factfinder to determine whether the County complied with applicable constitutional standards. But he does not tell the factfinder how to interpret or apply the law.

Lindsay has specialized knowledge based on his background, training, education, experience, and personal observations that qualify him to form opinions and reach conclusions in this case. *See Steward*, 2018 WL 11361746, at *2. Contrary to the County's contention, Lindsay

does not need "direct knowledge of the operations of Texas jails" to provide opinions on constitutional standards. (Doc. 16 at 8) His knowledge is relevant to the issues in this case, and the facts and data he relied on are the type of evidence reasonably relied upon by experts in his field. *See id*. And his testimony may assist the factfinder in reaching its decisions. *See id*. The factfinder can accept or reject Lindsay's opinions or conclusions in whole or in part. *See id*.

Lindsay does not advise the factfinder on how the law should be interpreted or applied. Rather, based on his specialized knowledge, he offers opinions and conclusions regarding the proper standards for correctional facilities to avoid violating the Constitution. Lindsay further opines on why, based on his specialized knowledge, he believes the County violated those standards. The factfinder is free to reject those opinions and conclusions. Thus, Lindsay's opinions and conclusions do not constitute improper legal conclusions and should not be excluded.

### III.     CONCLUSION

For the reasons stated above, the Court should find that Lindsay meets the requirements as an expert pursuant to Federal Rule of Evidence 702. Lindsay is qualified to opine as he does in his report. His report addresses his expertise, and he documents the facts on which his opinions rely. His opinions are also relevant and reliable and will assist the jury in understanding the evidence in this case, and he can be cross-examined at trial on his opinions. Plaintiff respectfully requests that the County's motion to exclude Plaintiff's expert be denied.

Respectfully submitted,

*/s/ Alexandra W. Payne*

Alexandra W. Payne

Attorney-in-charge:

T. Dean Malone
dean@deanmalone.com
Texas State Bar No. 24003265
Southern District of Texas Bar No. 37893
Law Offices of Dean Malone, P.C.
900 Jackson Street, Suite 730
Dallas, Texas 75202
Telephone:   (214) 670-9989
Telefax:       (214) 670-9904

Of Counsel:

Jennifer Kingaard
Texas State Bar No. 24048593
Southern District of Texas Bar No. 589455
jennifer.kingaard@deanmalone.com
Alexandra W. Payne
Texas State Bar No. 24118939
Southern District of Texas Bar No. 3799983
alexandra.payne@deanmalone.com
Jessica Bebawi
Texas State Bar No. 24108867
Southern District of Texas Bar No. 3886075
jessica.bebawi@deanmalone.com
Law Offices of Dean Malone, P.C.
900 Jackson Street, Suite 730
Dallas, Texas 75202
Telephone:   (214) 670-9989
Telefax:       (214) 670-9904

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 20, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court, and the electronic case filing system sent a notice of electronic filing to all attorneys of record.

                                                */s/ Alexandra W. Payne*
                                                Alexandra W. Payne