UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| MARIA GARCIA, as dependent administrator of and on behalf of the ESTATE OF CHRISTOPHER TORRES-GARCIA, and CHRISTOPHER TORRES-GARCIA's heir(s)-at-law and wrongful death beneficiaries; | § § § § § § § | CIVIL ACTION NO. 5-23-CV-00137 |
| Plaintiff, | § § | JURY DEMANDED |
| v. | § § | |
| WEBB COUNTY, TEXAS; | § § | |
| Defendant. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE AND EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT RALPH D. SCOTT, JR., PHD.

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff files this Response to Defendant's Motion to Strike and Exclude the Testimony of Plaintiff's Expert Ralph D. Scott, Jr., PhD. In support, Plaintiff shows the Court as follows:

## I.    BACKGROUND

Christopher Torres-Garcia suffered and died a preventable death from sepsis while he was detained in the Webb County jail. (Doc. 1) Plaintiff filed her Original Complaint on December 1, 2023, alleging violations of Mr. Torres-Garcia's constitutional rights. (Doc. 1) Pursuant to the Court's Scheduling Order, Plaintiff designated expert witnesses on June 28, 2024, and served copies of expert reports to the County on that date. (Doc. 11)

Plaintiff designated Dr. Scott, an experienced economist, as one of her expert witnesses. Webb County seeks to exclude Dr. Scott from testifying on several opinions in his report. (Doc. 19) However, Dr. Scott's opinions meet the standards under Rule 702 and *Daubert*, and his

opinions will help the trier of fact determine relevant issues at trial. At trial, Dr. Scott will be available for cross-examination, and the jury will have the opportunity to weigh the evidence and testimony before it. There is no basis for excluding his opinions at this stage.

## II.    ARGUMENTS AND AUTHORITIES

A party offering expert testimony has the burden of demonstrating that the expert is qualified and that the expert's testimony is reliable and relevant to an issue in the case. *See Daubert v. Merrell Dow Pharms.*, *Inc.*, 509 U.S. 579 at 590-91 (1993). But "[t]he proponent [of expert testimony] need not prove to the judge that the expert . . . is correct." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The proponent is only required to show "by a preponderance of the evidence that the testimony is reliable." *Id*. Pursuant to the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

While there are a number of factors a Court may consider when determining whether to allow or exclude expert testimony, *Daubert* factors are not "a definitive checklist or test." *Daubert,* 509 U.S. at 593. Rather, the *Daubert* framework is "a flexible one." *Id.* at 594; *see Buttross Props. v. Underwriters at Lloyds London*, SA-16-CV-1272, 2017 WL 9362700, at *1 (W.D. Tex. Sept. 12, 2017). And it is within the "sound discretion" of the district court to decide whether to allow or exclude an expert from testifying. *Id*., *citing St. Martin v. Mobil Expl. & Producing U.S.,*

*Inc.,* 224 F.3d 402, 405 (5th Cir. 2000).

Importantly, "the trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (quoting Fed. R. Evid. 702 advisory committee's note). "Rather, as *Daubert* makes clear, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id*. (quoting *Daubert*, 509 U.S. at 596). Accordingly, "a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Id*. The factfinder should hear expert testimony and decide whether to "accept or reject that testimony after considering all factors that weigh on credibility, including whether the predicate facts on which [the expert] relied are accurate." *Id*.

Dr. Scott is a tenured professor of economics at Hendrix College in Arkansas. (Exhibit 1) He also teaches microeconomics and macroeconomics, and economic theory, amongst other courses at multiple colleges and universities. (Exhibit 1) Dr. Scott has served as an economic and financial consultant for over thirty-five years and has extensive experience in personal injury and wrongful death lawsuits, where he has provided expert opinions for plaintiffs and defendants. (Exhibit 1) Dr. Scott offers opinions in this case regarding the computations and valuation, including the projected future valuation of such damages, of the "loss of life" that resulted from Mr. Torres-Garcia's death. (Doc. 19-1 at 2)

The County seeks to exclude Dr. Scott's opinions on the basis that his opinions are not reliable and are thus confusing and prejudicial. (Doc. 19 at 2-3) Not so. As an expert witness, Dr. Scott is required to provide opinions that are "based on sufficient facts or data;" "are the produce of reliable principles and methods" which he "has reliably applied…to the facts of the case;" and

which will "help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. Dr. Scott's opinions clearly meet this standard.

Dr. Scott's opinions are based on sufficient facts and data and reliable principles and methods, and he has reliably applied those principles and methods to this case. The County points to a number of alleged flaws with Dr. Scott's methodology in the form of a list of factors that Dr. Scott did not take into consideration when forming his opinions. (Doc. 19 at 3) One of the County's issues is that Dr. Scott did not "conduct any valuations related to the plaintiffs in this case," purportedly meaning Dr. Scott did not talk to Plaintiff or other wrongful death beneficiaries about the impact that the loss of Mr. Torres-Garcia's life had on them. (Doc. 19 at 3) Dr. Scott's opinions are limited to a calculation and valuation of "loss of life." (Doc. 19-1 at 1) He is not opining on other types of damages, such as loss of companionship, society, or consortium. (*See*, Doc. 1) The relationships between these individuals and Mr. Torres-Garcia are simply not a factor underlying Dr. Scott's "loss of life" opinions.

Similarly, the County argues that Dr. Scott's opinions are unreliable because he did not take into consideration Mr. Torres-Garcia's work history or any past "wages or rates of employment." (Doc. 19 at 3) This is not a basis for excluding Dr. Scott's opinions as there is no issue with the facts and data or principles and methodology that Dr. Scott used to arrive at his opinions. It is nonsensical to ask Dr. Scott to consider factors outside the scope of his actual opinions.

The County also seems to believe that Dr. Scott's economic opinions to be unreliable because Dr. Scott did not consider certain life expectancy factors for Mr. Torres-Garcia, such as alcohol or other substance use. (Doc. 19 at 4) Dr. Scott is not providing opinions on Mr. Torres-Garcia's life expectancy. He is not a medical doctor and would not be qualified to opine on how a

person's lifestyle, work history, or criminal history affect life expectancy. Thus, it would not only be unnecessary for Dr. Scott to have taken these factors into consideration for Mr. Torres-Garcia, but it would also be outside the scope of Dr. Scott's expertise. The County is effectively arguing that Dr. Scott did not consider certain factors when forming opinions he is not even offering.

Dr. Scott's opinions are also not a calculation of how long Mr. Torres-Garcia was expected to live based on his health and lifestyle but rather an economic "methodology to reduce future values into present value terms" to help the trier of fact understand and determine loss of damages. (Doc. 19-1 at 3) To form his opinions, Dr. Scott relied upon the Center for Disease Control publication *United States Life Tables 2019* to determine the estimated life expectancy for someone of someone with Mr. Torres-Garcia's date of birth, date of death, race, and gender, as well as publications by several reputable federally applicable sources, including the United States Government Office of Management and Budget, the United States Department of Transportation, the Environmental Protection Agency, the Department of Homeland Security, the Occupational and Safety and Health Administration, the Food and Drug Administration, the Consumer Product Safety Commission, and the Federal Aviation Administration. (Doc. 19-1 at 2-4, 32 [22:11-16])[1] Each of these sources "provide[s] assistance [to the jury] by presenting the values that government agencies place on the statistical value of life." (Doc. 19-1 at 3)

Dr. Scott is not purporting to have calculated Mr. Torres-Garcia's life expectancy or to have provided a valuation for the loss of various relationships. Dr. Scott's testimony helps the trier of fact understand and value "loss of life." (Doc. 19-1 at 1) Dr. Scott testified at his deposition that he "just presented the figures" and that "how that would be reduced to present value if it was subject to a present value instruction" was "the only calculation [he] actually did." (Doc. 19-1 at

---

[1] Dr. Scott included relevant data from these sources Table 3 of his report. (Doc. 19-1 at 8)

32-33 [22:22–23:2])

There has been no challenge to the reliability of the principles and methodology that Dr. Scott actually used. The economic and statistical data upon which Dr. Scott based his opinions is from a variety of reputable sources. And he reliably applied his principles and methods to the relevant facts of this case. Dr. Scott is clearly qualified to offer these opinions under Rule 702, and the opinions he seeks to offer will help the trier of fact understand the economic valuation of "loss of life" damages.

Moreover, Dr. Scott will be available for "[v]igorous cross-examination." *Pipitone*, 288 F.3d at 250. The jury, after receiving "careful instruction on the burden of proof" will have the opportunity to hear the "presentation of contrary evidence" and can decide for itself whether to "accept or reject that testimony after considering all factors that weigh on credibility, including whether the predicate facts on which [the expert] relied are accurate." *Id.* The jury should not be stripped of this opportunity. And "a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Id*. Dr. Scott is qualified and has offered reliable opinions. There is no basis for his opinions to be excluded.

## III.    CONCLUSION

For the reasons stated above, the Court should find that Dr. Scott meets the requirements as an expert pursuant to Federal Rule of Evidence 702. Dr. Scott's report addresses his opinions, his expertise, and the documents the facts on which his opinions rely. His opinions are also relevant and reliable and will assist the jury in understanding the evidence in this case, and he can be cross-examined at trial on his opinions. Plaintiff respectfully requests that the County's motion to exclude Plaintiff's expert be denied.

Respectfully submitted,

*/s/ Alexandra W. Payne*

Alexandra W. Payne

Attorney-in-charge:

T. Dean Malone
dean@deanmalone.com
Texas State Bar No. 24003265
Southern District of Texas Bar No. 37893
Law Offices of Dean Malone, P.C.
900 Jackson Street, Suite 730
Dallas, Texas 75202
Telephone:    (214) 670-9989
Telefax:        (214) 670-9904

Of Counsel:

Jennifer Kingaard
Texas State Bar No. 24048593
Southern District of Texas Bar No. 589455
jennifer.kingaard@deanmalone.com
Alexandra W. Payne
Texas State Bar No. 24118939
Southern District of Texas Bar No. 3799983
alexandra.payne@deanmalone.com
Jessica Bebawi
Texas State Bar No. 24108867
Southern District of Texas Bar No. 3886075
jessica.bebawi@deanmalone.com
Law Offices of Dean Malone, P.C.
900 Jackson Street, Suite 730
Dallas, Texas 75202
Telephone:    (214) 670-9989
Telefax:        (214) 670-9904

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 27, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court, and the electronic case filing system sent a notice of electronic filing to all attorneys of record.

<u>*/s/ Alexandra W. Payne*</u>

Alexandra W. Payne